IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY TOTTEN,                        )
                                       )
            Petitioner,                )          CASE NO. 05-1675 TEH
                                       )          CASE NO. 05-1965 TEH
      vs.                              )          CASE NO. 07-5974 TEH
                                       )
A. P. KANE, Warden,                    )          ORDER DENYING
                                       )          PETITIONS FOR
            Respondent.                )          WRIT OF HABEAS
_____       )          CORPUS

**INTRODUCTION**

        Petitioner, proceeding pro se, is a state prisoner currently incarcerated at

the Correctional Training Facility in Soledad, California.  Petitioner filed these

habeas petitions pursuant to 28 U.S.C. § 2254 following the denial of parole by

the Board of Prison Terms ("BPT"), later called the Board of Parole Hearings

("BPH") after hearings on January 27, 2003, June 29, 2004, and November 27,

2007.  This Court ordered Respondent to show cause as to why the two 2005

petitions should not be granted in a joint order.  Thereafter,  Respondent filed an

answer and a memorandum in support thereof and Petitioner filed a traverse with

regard to the two 2005 petitions.  With regard to the 2007 matter, Respondent

filed an answer and memorandum in support thereof on July 27, 2008 and

Petitioner filed an answer on August 18, 2008.  These matters comes before the

Court for resolution on the merits.  Having reviewed the parties' papers, and the

record herein, the Court DENIES the petitions for a writ of habeas corpus for the reasons stated below.

## BACKGROUND

### 1. Commitment Offense

On October 30, 1990, Petitioner confronted and shot his pregnant estranged wife, Janet Totten in the head.  Mrs. Totten had recently obtained a restraining order against Petitioner because of problems they were having during child visitation arrangements.  At the time, she was four months pregnant with Petitioner's baby, but Petitioner had wanted his wife to have an abortion.  On that date, Petitioner met her at Kaiser Permanente, where he knew she had just finished an obstetrical appointment.   Petitioner was carrying a white box, which he stated was a birthday present for his daughter.  Petitioner asked Mrs. Totten to give him a ride to his car, which she agreed to do.  However, during the course of the ride, Petitioner pulled out a rifle from the white box he was carrying.  After a struggle over the weapon, the rifle was discharged twice in the car, with one of the bullets hitting Petitioner in the leg, but neither hitting Mrs. Totten.  Mrs. Totten got out of the car and ran toward the medical facility.  Petitioner ran after her with the rifle and shot her once in the back of the head.  Mrs. Totten did not die, but sustained substantial head injuries which left her partially deaf and required that her jaw had to be wired shut for over a month during her pregnancy.

Petitioner subsequently turned himself in to the police on October 31, 1991, at the Garden Grove Police Department.  Petitioner remained free on bail until his conviction, after trial.  On January 3, 1992, a jury convicted Petitioner of attempted murder, finding that it was premeditated, willful and deliberate.  Resp. Ex. 1.  Petitioner was sentenced to life with the possibility of parole plus a three year enhancement for using a firearm during the life offense.

**2. Parole and State Court Proceedings**

  A. <u>Parole Consideration Hearing on January 27, 2003</u>

   On January 27, 2003, the BPT conducted a parole consideration hearing with regard to Petitioner. This was Petitioner's second parole review hearing. The BPT found Petitioner was not suitable for parole, denying parole for a period of one year. The BPT's decision denying parole relied on a variety of factors in finding Petitioner unsuitable for parole, including: the circumstances of Petitioner's commitment offense and specifically that after Petitioner had been shot, he had to inject another bullet into the rifle before shooting the victim, Dr. Rueschenberg's psychological report that was not totally supportive of a grant of parole and that Petitioner posed a low to moderate risk of future violence, and the opposition of the District Attorney and the Huntington Beach Police Department. Although Petitioner was commended for his participation in rehabilitation programs and vocational training, the panel found that the positive factors did not outweigh the factors of unsuitability. The decision denying parole found that Petitioner "pose[d] an unreasonable danger to society or threat to public safety if released from prison . . . the primary concern is the offense, which was carried out in an exceptionally violent and brutal manner . . . which demonstrates an exceptionally callous disregard for human suffering." Resp. Ex. 2.

   Petitioner subsequently appealed the decision to the Board of Prison Terms Office of Policy and Appeals. Petitioner contends that the BPT improperly considered his commitment offense. Additionally, he argues that his rights under the Eighth and Fourteenth Amendments were violated by the BPT's failure to set a parole date. The Appeals Board denied Petitioner's appeal, stating that § 3041(b) of the Penal Code explicitly directs the BPT to consider the commitment offense when determining suitability. The Appeals Board also

1  rejected Petitioner's claim that his constitutional rights were violated.

2       Petitioner then filed a petition for a writ of habeas corpus in the Superior

3  Court of Orange County on the same grounds.  The Superior Court for Orange

4  County held that Petitioner's denial of parole by the Board was based on the

5  circumstances of the commitment offense, which was carried out in an

6  exceptionally violent and brutal manner demonstrating callous disregard for

7  human suffering, the psychological evaluation which was not completely

8  supportive of release, and the opposition of the Police Department and District

9  Attorney's Office.  Resp. Ex. 10 at 2.  The Court found the decision was not

10  without evidentiary support and that "due consideration of Petitioner's eligibility

11  for parole was considered based on the circumstances of the commitment offense

12  and opposition to parole as expressed by Orange County District Attorney's

13  Office and the Huntington Police Department." Id. at 3.  Following denial of the

14  writ, Petitioner filed a habeas petition in the Court of Appeal and the Supreme

15  Court of California.  Both courts summarily denied Petitioner's appeal.

16       B.  Parole Consideration Hearing on June 29, 2004

17       On June 29, 2004, the BPT conducted Petitioner's third parole

18  consideration hearing.  The BPT again found Petitioner unsuitable for parole and

19  denied parole for a period of two years.  The decision of the BPT noted that it had

20  considered Petitioner's commitment offense, past rehabilitation and positive

21  behavior traits since the last probation hearing and a new psychological report by

22  Dr. Talbott, which was unfavorable regarding Petitioner's insight about the effect

23  of the crime, dangerousness and lack of maturity.  Resp. Ex. 3 at Decision Page

24  2-3.  The BPT reasoned that Petitioner's crime was especially cruel and

25  calculated and was carried out in an exceptionally callous manner and that Dr.

26  Talbott's psychologist report was unfavorable to granting Petitioner parole at this

27

28                                    4

time, in that he requires a longer period of observation and evaluation. Although the panel of the BPT commended Petitioner for completing various vocational and rehabilitative programs, they found that these positive factors did not outweigh his unsuitability for parole.

Petitioner then filed a petition for a writ of habeas corpus in the Superior Court of Orange County contending that the Board denied parole despite overwhelming evidence of Petitioner's rehabilitation. Petition also claimed that he has exceeded his matrix category for his offense and that Board's refusal to grant parole, is in gross excess of the matrix guidelines. The Superior Court of Orange County denied Petitioner's writ, finding that the decision of the BPT was supported by "some evidence" and that the BPT properly considered Petitioner's commitment offense and his subsequent psychological evaluations, in relation to the positive factors. The court found that the decision was not without support and cannot be said to be based on "whim, caprice, or rumor." Resp. Ex. 20. Petitioner filed for a writ of habeas corpus in both the California Court of Appeal and the Supreme Court of California. Both petitions were summarily denied.

C. Parole Consideration Hearing on August 3, 2006

On August 3, 2006, the Board of Parole Hearings ("BPH") conducted Petitioner's next parole consideration hearing. The BPH again found Petitioner unsuitable for parole and denied parole for a period of two years. The decision of the BPH noted that it had considered Petitioner's commitment offense, past rehabilitation and positive behavior since the last probation hearing and the 2003 psychological report by Dr. Talbott, which was not totally supportive of release. Resp. Ex. 3 at Decision Page 2-3. In denying parole, the BPH reasoned that Petitioner's crime was especially cruel and callous, the victim was particularly vulnerable and the crime was carried out in a dispassionate and calculated

5

manner.  Although the panel of the BPH commended Petitioner for completing various vocational and rehabilitative programs, they found that these factors did not outweigh his unsuitability for parole.  The BPH specifically recommended anger management for Petitioner, to gain greater insight into the crime, stating "the panel believes you're still in denial about the causative factors in the relationship with you and your wife, and perhaps other relationships that led to the commitment offense, therefore, you remain unpredictable and a threat to public safety."  Id. at Pet. Exh. 1 at Decision Page 5.

Petitioner filed a petition for a writ of habeas corpus in the Superior Court of Orange County contending that the BPH's denial of parole violated due process because it was not supported by evidence that he is a current threat by a preponderance of the evidence, that he has exceeded his matrix category for the offense and that the Board has an unwritten policy to refuse parole to those who exercise their right not to discuss the commitment offense.  The Superior Court of Orange County denied Petitioner's writ, finding that the decision of the BPH was supported by "some evidence" and that the BPH properly considered Petitioner's commitment offense and his most recent psychological evaluation regarding Petitioner's limited insight into the crime rendering him a continued threat to public safety.  Resp. Ex. B.  Petitioner filed for a writ of habeas corpus in both the California Court of Appeal and the Supreme Court of California.  Both petitions were summarily denied.

## LEGAL STANDARD

### 1.  Due Process

Although there is no per se right or constitutional guarantee for a convicted person to be granted parole prior to his release date, California's parole scheme gives rise to a protected liberty interest.  McQuillon v. Duncan, 306 F.3d

895, 902 (9th Cir. 2002).  Thus, the scheme creates a presumption that parole release will be granted unless the statutorily defined determinations are made.  Id. California Penal Code section 3041(b) provides:

> The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of the current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore cannot be fixed.

The Ninth Circuit has made it clear that prisoners continue to have a liberty interest in parole.  Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006).  Because California prisoners have a constitutionally protected liberty interest in parole, the Prison Board cannot decline to grant a parole date without first satisfying the requirements of due process.  This determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

**2.  Standard of Review**

To satisfy the requirements for due process in the parole context, the parole board's decision must be supported by "some evidence."  Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition). When determining the some evidence standard, an examination of the entire record is not required, rather "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board."  Id.  Additionally, the evidence underlying the board's decision must have some indicia of reliability.

1    McQuillon, 306 F.3d at 904.

2         When assessing whether a state parole board's suitability determination

3    was supported by "some evidence," the court's analysis is framed by the statutes

4    and regulations governing parole suitability determinations in the relevant state.

5    Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007).  Accordingly, in California, the

6    court must look to California law to determine the findings that are necessary to

7    deem a prisoner unsuitable for parole, and then must review the record in order to

8    determine whether the state court decision holding that these findings were

9    supported by "some evidence" constituted an unreasonable application of the

10   "some evidence" principle articulated in Hill.  Id.; see id. at 852-53 (finding state

11   court did not unreasonably apply "some evidence" standard to uphold parole

12   suitability denial where there was some evidence at the time of the hearing to

13   support a finding that the prisoner would present a danger to society based on the

14   nature of the commitment offense under the applicable parole regulations).

15        The Ninth Circuit has recently clarified that "California courts have made

16   clear that the 'findings that are necessary to deem a prisoner unsuitable for parole

17   are not that a particular factor or factors indicating unsuitability exist, but that a

18   prisoner's release will unreasonably endanger public safety.'"  Hayward v.

19   Marshall, 512 F.3d 536, 543 (9th Cir. 2008) (citations omitted) (quoting Irons,

20   505 F.3d at 850).  The relevant criteria under which the BPT ordinarily

21   determines whether a prisoner is too dangerous to be found suitable for parole are

22   set forth in the California Code of Regulations at Cal. Code Regs. tit. 15, § 2402.

23   Id.  This Court must therefore determine whether the state court decision finding

24   the BPT's decision was supported by "some evidence the parolee's release

25   unreasonably endangers public safety."  Id. (citation omitted.)

26        The decision regarding parole suitability must be based on some evidence

27

28                                              8

with some indicia of reliability to support its decision.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam); McQuillon, 306 F.3d 904.  A relevant factor in determining whether the evidence underlying the board's decision has some indicia of reliability is whether the prisoner was afforded an opportunity to appear before, and present evidence to the board.  See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987)., cert. denied, 484 U.S. 1017 (1988).  The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." Hill, 472 U.S. at 457.  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).  **3. Section 2254(d)**

Petitioner's request for habeas relief comes before this Court pursuant to 28 U.S.C. § 2254.  The Ninth Circuit has applied section 2254(d) to review parole suitability decisions. See Rosas, 428 F.3d at 1232.  As such, his request is to be analyzed under the deferential standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  McQuillon, 306 F.3d at 901 (assuming without deciding that AEDPA deferential standard of review under section 2254 applies to such decisions).

Under the AEDPA, a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was adjudicated on the merits in state court only if the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of th United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28

9

1  U.S.C. § 2254(d).  Under this deferential standard, a district court is to presume

2  that any determination of factual issues by a state court are correct, unless the

3  Petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. §

4  2254(e)(1).

5      A. "Adjudicated on the Merits"

6      A state court has "adjudicated" a petitioner's claim "on the merits" for

7  purposes of section 2254(d) when it has decided petitioner's right to post-

8  conviction relief on the basis of the substance of the constitutional claim, rather

9  than denying the claim on the basis of a procedural or other rule precluding state

10  court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir.

11  2004).

12      B.  "Clearly Established Federal Law"

13      "Clearly established federal law, as determined by the Supreme Court of

14  the United States" refers to the "holdings, as opposed to the dicta of the Court's

15  decisions as of the time of the relevant state-court decision."  Williams v. Taylor,

16  529 U.S. 362, 412 (2000).   The AEDPA establishes a highly deferential standard

17  for reviewing state-court determinations.  Id. at 412.  Accordingly, a federal court

18  may not overrule a state court for simply holding a view different from its own.

19  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  The Ninth Circuit has held that the

20  "some evidence" standard is clearly established law.  Sass, 461 F.3d at 1129.

21      C. "Contrary To"

22      Under the "contrary to" clause, a federal habeas court may grant the writ if

23  a state court arrives at a conclusion opposite to that reached by the Supreme

24  Court on a question of law or if the state court decides a case differently than the

25  Supreme Court on a set of materially indistinguishable facts.  Williams, 529 U.S.

26  at 413.  While state court decisions are not required to cite to Supreme Court

27

28                                              10

cases, the decision is valid "so long as neither the reasoning, nor the result of the state court decision contradicts the [Supreme Court]." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).

### D.  "Unreasonable Application"

A state court decision is an "unreasonable application" of Supreme Court authority if it correctly identifies the governing legal principle but "unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  Upon review of a state court decision, the federal court may not issue a writ "simply because the Court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.  Instead, the application must also be unreasonable. Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable; Woodford v. Visciotti, 527 U.S. 19, 25 (2002) (per curiam) ("unreasonable application" of law is not equivalent to "incorrect" application of law).  To determine whether the state court's decision was unreasonable, the federal court must assess unreasonableness in light of the record before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

### E. "Unreasonable Determination of the Facts"

Pursuant to Section 2254(d), a federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  An unreasonable determination of facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state court record.  Taylor v.

11

1 <u>Maddox</u>, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume

2 correct any determination of factual issue made by the state court, unless the

3 petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. §

4 2254(e)(1).

5 **4. Exhaustion**

6   Prisoners in state custody who wish to challenge collaterally in federal

7 habeas proceedings either in fact or length of the confinement are required first to

8 exhaust state judicial remedies, either on direct appeal or through collateral

9 proceedings, by presenting the highest state court available with fair opportunity

10 to rule on the merits of each and every claim they seek to raise in federal court.

11 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies

12 were exhausted for the claims asserted in this petition.

13          **DISCUSSION**

14   Petitioner argues that the BPT and the BPH violated his due process rights

15 by failing to find him suitable for parole, thus depriving him of his liberty interest

16 in release.  Respondent disagrees, holding that Petitioner has no such liberty

17 interest in parole.  This Court rejected Respondent's argument in its September

18 26, 2006 order denying Respondent's motion to dismiss.  Additionally, the Ninth

19 Circuit has explicitly held that a cognizable liberty interest in parole exists, even

20 in light of the California Supreme Court's decision in <u>In re Dannenberg</u>.  <u>Sass</u>,

21 461 F.3d at 1128 (finding that the district court misread <u>Dannenberg</u>;

22 "*Dannenberg* did not explicitly or implicitly hold that there is no constitutionally

23 protected liberty interest in parole").

24   A court may not conduct a de novo review of a matter that has been

25 adjudicated on the merits in state court.  <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 638-

26 43 (2003).  The instant case has been adjudicated in the Orange County Superior,

28           12

where Petitioner's claim was considered on the merits.[1]  Under the AEDPA, the proper analysis is whether the state court adjudication resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of fact in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  The factual determinations made in the Orange County Superior Court are presumed correct absent clear and convincing evidence to the contrary.  See Miller-El v. Cockrell, 537 U.S. 322, 339 (2003).  Thus, under section 2254(d)(2), the state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."  Miller-El, 537 U.S. at 340.  The Court will address Petitioner's three habeas petitions regarding each parole hearing decision separately.

**1.  Superior Court Decision on October 8, 2004**

Since the Orange County Superior Court decision in each of Petitioner's claims is the last reasoned decision regarding Petitioner's challenge, it is this decision which this Court reviews under 28 U.S.C. § 2254(d).  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991).  The Orange County Superior Court found that the BPT considered a variety of factors including: Petitioner's commitment offense, unsupportive psychological evaluations, and the District Attorneys' Office and Huntington Beach Police Department's opposition to his release when denying Petitioner's parole.

---

[1]Petitioner also appealed to the California Court of Appeal, Fourth Appellate District and the Supreme Court of California.  Both petitions for writ were summarily denied.  When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the court looks to the last reasoned opinion, in this case that of the Orange County Superior Court.  See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

1    As such, the court found that the BPT's decision was not void of

2    evidentiary support.  The court found "the record adequately establishes due

3    consideration of petitioner's eligibility for parole as well as a sufficient

4    evidentiary foundation for the Board's decision based on the circumstances of the

5    commitment offense and the opposition by Orange County District Attorneys'

6    Office and Huntington Beach Police Department."  Resp. Ex. 11.  The court

7    further noted that high deference must be paid to the BPT's factual

8    determinations, and their decision must not be disturbed unless it acted arbitrarily

9    or capriciously.  In denying Petitioner's writ, the court found that there was

10   "some evidence" to support the BPT's decision.

11   While Petitioner contends that the BPT impermissibly considered the

12   commitment offense and did not weigh his positive factors in relation to the factors

13   for unsuitability, the record shows that there is some evidence to support the BPT's

14   decision.  As noted above, high deference is given to the BPT's factual

15   determinations, so long as the record supports due consideration of petitioner's

16   suitability for parole.  See In re Morrall, 102 Cal. App. 4th 280, 301 (2002).  It

17   cannot be said that the BPT had "no evidence" to support its decision, as Petitioner

18   contends.  The BPT specifically commended Petitioner for his accomplishments,

19   told him to continue such behavior as they will be factored in at his next parole date.

20   At the same time, however, the BPT determined that although Petitioner had some

21   positive factors supporting parole, those factors did not outweigh the factors finding

22   him unsuitable for parole.  Accordingly, the Superior Court deferred to the BPT and

23   held that Petitioner failed to make a prima facie case that the BPT's decision was

24   without some evidence.

25   In determining whether the BPT's decision was supported by "some

26   evidence," the Superior Court noted that consideration of the commitment offense,

27

28                                          14

as well as the opposition statements made by the District Attorney's Office and the Huntington Beach Police Department were factors in determining Petitioner's suitability.  These factors may be considered as provided under California Code of Regulations Title 15, Section 2402(b).  The statutory guidelines, Section 2402(b) and (c), specifically state that the prior commitment offense as well as past and present attitude about the crime are to be taken into consideration when determining suitability.  Petitioner relies on <u>Biggs v. Terhune</u>, 334 F.3d , 916 (9th Cir. 2003), stating that repeated reliance on the commitment offense in light of exemplary behavior can raise serious questions as to Petitioner's liberty interest in parole.

Petitioner contends that there is no evidence that the crime he committed is an aggravated form of attempted murder.  Resp. Ex 10.  However, the plain language of section 2402 does not require it to be an aggravated offense.  Instead, the statute allows the BPT to consider the commitment offense when determining suitability if it "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering."  15 Cal. Code Regs. § 2402(c)(1)(D).  Specifically, the BPT stated that because "this was not a situation where things got out of control and the gun went off . . . [rather] it was a calculated offense, where Petitioner took the gun with him knowing that [Mrs. Totten] was going to be there and knowing that she had a restraining order against him . . . and that a rifle was fired and ammunition loaded into the chamber at least four times . . .[with the intention of murdering Mrs. Totten] and leaving his other two children without a mother."  Resp. Ex. 3.

Moreover, in <u>Irons</u>, the Ninth Circuit noted that under California law, the circumstances of a petitioner's commitment offense may be sufficient to find him too dangerous to be found suitable for parole, where the Board can point to factors beyond the minimum elements of the crime that point to dangerousness.  <u>Irons</u>, 505

15

F.3d at 852 (citing <u>Dannenberg</u>).  However, while the circumstances of Petitioner's commitment offense might be sufficient standing alone to constitute "some evidence" on which the Board could legally base its decision, here the Board also set forth additional evidence to further support its finding of unsuitability.  These findings include the unsupportive psychological examinations as well as the opposition stated by the District Attorneys' Office and the Huntington Beach Police Department, as well as a letter by the victim.  A psychological review of Petitioner evaluated him as posing a low to moderate risk if released on parole.  The BPT stated that they would rather see a low to no risk before releasing Petitioner out on parole.  Further, the District Attorney voiced strong opposition due to the way the crime was carried out and stated that the victim continues to feel extraordinary fear towards the defendant.  As stated previously, these considerations fall within the statutory ambit of Section 2402(b) and (c) when determining suitability.

Having reviewed the record and the facts of the crime as recited by the BPT and the state court, the Court finds there was "some evidence" in the record to support the state court decision.  Accordingly, the Court concludes that the state court's decision was not based on an unreasonable determination of facts in light of the evidence presented to state court, nor was it contrary to, or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1)(2).

**2.  Superior Court Decision on December 15, 2004**

Following Petitioner's's third denial of parole, on June 24, 2004, Petitioner filed a petition for a writ of habeas corpus in Orange County Superior Court. Petitioner relies primarily on the same arguments made in the previous petition. During the parole determination hearing, the BPT found that Petitioner was still not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  Resp. Ex. 3.  The BPT relied on

16

Petitioner's commitment offense and his psychological evaluation when determining his suitability for parole.  The Orange County Superior Court found that the BPT sustained their burden of establishing that there was "some evidence" to support the Board's decision.

The Court noted that in <u>Van Houten</u>, the commitment offense may provide a sufficient basis for the denial of parole, particularly if it involved egregious acts beyond the minimum necessary to sustain the conviction.  <u>See</u> <u>In re Van Houten</u>, 116 Cal. App. 4th 339, 348 (2004); <u>see</u> <u>also</u>, <u>In Re Rosenkrantz</u>, 29 Cal. 4th 616, 682 (2002).  Moreover, Section 2402 of the California Code of Regulations specifically allow for consideration of the commitment offense and the nature of the crime when determining suitability.

The Orange County Superior Court further stated that the Board's reliance on commitment offense was not the only factor in denying parole, but also the psychiatric evaluation conducted by R. Talbott, which played a crucial role in the Board's decision in denying parole.  Specifically, Dr. Talbott noted that when evaluating Petitioner, "Mr. Totten talk[ed] about [how] the crime affected **him** rather than how it affected his former wife and children."  Resp. Ex. 20.  Talbott further noted that although the Petitioner poses a low risk for violence within the prison system, however, it is unclear if will be a low risk in the free community."

Section 2402(b) specifically includes that " behavior before, during and after the crime . . . [and] past and present attitude toward the crime," are relevant factors to consider for suitability.  Further, while feelings of remorse are signs of suitability, the BPT found that Petitioner lacked remorse and had a "self-centered" view of his actions.  The Board found that this weighed against Petitioner despite his accomplishments during his incarceration.  The BPT noted his positive factors of suitability, but determined that the factors showing parole suitability did not

17

outweigh those showing unsuitability.  The Court found that the factors relied on by the BPT, including Dr. Talbott's evaluation, in addition to the gravity of the commitment offense, sufficed under the "some evidence" standard to uphold Petitioner's denial of parole.

As stated previously, the use of the commitment offense and attitudes of past in denying parole is within the statutory grant under the applicable regulations, as well as under current precedent.  Irons, 505 F.3d at 852.  Accordingly, the state court's decision was not based on an unreasonable determination of facts in light of the evidence presented to state court, nor was it contrary to, or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1)(2).

**3.  Superior Court Decision of May 14, 2007**

Following Petitioner's subsequent denial of parole, on March 20, 2007, Petitioner filed a petition for a writ of habeas corpus in Orange County Superior Court.  Petitioner relies on the same arguments raised in his earlier petitions here. Petitioner also argues that the preponderance of the evidence standard set forth in the United States Supreme Court's decision in Hamdi v. Rumsfeld, 542 U.S. 507 (2004) applies to this case.

During the parole suitability hearing, the BPH found that Petitioner remained unsuitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  Pet. Exh. 1.  The BPH relied on Petitioner's commitment offense, which was carried out in an especially cruel and callous manner, on his "particularly vulnerable" pregnant estranged wife.  Id. at Decision Page 1.  The Board also relied on Petitioner's most recent psychological evaluation by Dr. Talbott in finding him unsuitable for parole.  The panel further found that Petitioner appeared to be "in denial about the causative factors. . .that led to the commitment offense, therefore you remain unpredictable and a threat to public

1    safety." Id. at Decision Page 5.  As a result, the BPH recommended Petitioner

2    complete anger management, in the hopes that he would gain insight into the

3    commitment offense.  Id.

4         The Orange County Superior Court found that "some evidence" in the record

5    existed to support the Board's decision. The Court found that the Board's reliance

6    on the fact that the  commitment offense was carried out in an especially cruel,

7    callous, dispassionate and calculated manner, that Petitioner's most recent

8    psychological evaluation was not completely supportive of release and the

9    opposition of the District Attorney's Office were supported by an adequate

10   evidentiary basis in the record and that "some evidence" existed to support the

11   Board's decision.  The BPH relied on the circumstances surrounding the

12   commitment offense, as well as psychological evidence regarding Petitioner's

13   attitude toward the offense, in finding that Petitioner posed an unreasonable risk of

14   danger if released.

15        Petitioner contends that the Board violated his right to due process by

16   applying the some evidence standard and contends that parole decisions should be

17   governed by a preponderance of evidence standard, citing Hamdi v. Rumsfeld, 542

18   U.S. 507 (2004).  However, Hamdi addressed the process due to a United States

19   citizen held as an enemy combatant, requiring notice of the factual basis for his

20   detention and a meaningful opportunity to rebut the government's assertions before a

21   neutral decisionmaker.  542 U.S. at 533.  The plurality opinion noted that the some

22   evidence standard was the appropriate standard for judicial review of an

23   administrative record, but determined that it was not suitable to review the

24   Government's basis for detention where the detainee had received no prior

25   proceedings or minimal due process.  Id. at 537.  Contrary to Petitioner's contention,

26   Hamdi does not suggest that the preponderance of the evidence standard governs

27

28                                    19

administrative proceedings such as parole suitability hearings.   As discussed above, the some evidence standard is the applicable standard of federal habeas review of a petition challenging parole denial under the AEDPA, but is not a standard of proof. See Hamdi, 542 U.S. at 537 ("we have utilized the 'some evidence' standard in the past as a standard of review, not as a standard of proof. . . . That is, it primarily has been employed by courts in examining an administrative record developed after an adversarial proceeding - one with process at least of the sort that we today hold is constitutionally mandated in the citizen enemy- combatant setting.").

With regard to the claims raised in the 2007 petition, the state court's determination that Petitioner's 2006 BPH unsuitability determination as a threat to public safety was supported by "some evidence" in the record was not based on an unreasonable determination of facts in light of the evidence presented to state court, nor was it contrary to, or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1)(2); Hayward v. Marshall, 512 F.3d at 543.

## CONCLUSION

Having established that none of the state court decisions resulted in a decision that was contrary to or based on an unreasonable application of clearly established law, or based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding, this Court denies Petitioner's request for habeas.  While Petitioner claims that the record is devoid of evidence to sustain his denial of parole, this Court finds the requisite "some evidence" in the record to support the Board's denial of parole.  Furthermore, the factual determinations made by the Orange County Superior Court are presumed correct, and Petitioner has not showed clear and convincing evidence to rebut the claim that the determinations

were unreasonable in light of the evidence presented.  Accordingly, Petitioner's habeas petitions are DENIED on the merits.

**IT IS SO ORDERED.**

DATED:   09/25/08

_____
THELTON E. HENDERSON
United States District Judge

21